UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| CHERYL D. LETCHER, | ) | CIV. 09-5008-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | **GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANT'S** |
| RAPID CITY REGIONAL | ) | **MOTION TO COMPEL** |
| HOSPITAL, INC., | ) | **RULE 35 EXAMINATION** |
| BOBBI JEAN JARVINEN, and | ) | |
| DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the court on plaintiff Cheryl D. Letcher's complaint

against defendants Rapid City Regional Hospital, Inc. ("RCRH"), Bobbi Jean

Jarvinen, and Does 1-5, for matters arising out of Ms. Letcher's employment at

RCRH. Defendants have filed a motion seeking to compel Ms. Letcher to

submit to an independent mental examination ("IME") with an expert of

defendant's choosing. [Docket No. 33]. The district court, the Honorable

Jeffrey L. Viken, referred defendants' motion to this magistrate judge for

resolution.

## FACTS

Plaintiff Cheryl D. Letcher was an employee of Rapid City Regional

Hospital ("RCRH") from 1987 until May 9, 2007. She filed a complaint against

RCRH, Bobbi Jean Jarvinen, and Does 1-5 on February 2, 2009. Ms. Jarvinen is alleged to have been Ms. Letcher's supervisor and also an employee of RCRH.

In her complaint, Ms. Letcher asserts that she was harassed on the basis of her disability and that defendants failed to make reasonable accommodation of her disability, in violation of the Americans with Disabilities Act, that defendants intentionally inflicted emotional distress on her, and that defendants negligently inflicted emotional distress on her. The condition which Ms. Letcher asserts disables her is a mental condition. Ms. Letcher seeks compensatory, general, special, and punitive damages among other relief. Defendants, *inter alia*, deny that Ms. Letcher is disabled, deny that defendants knew of any disability, and deny that they caused Ms. Letcher emotional distress.

In connection with the issues presented by the present motion, the following facts are relevant. Defendants' counsel contacted Ms. Letcher's counsel and indicated that defendants wished to conduct an IME pursuant to Fed. R. Civ. P. 35. Defendants offered to bring their expert to Ms. Letcher's location rather than requiring her to travel to the expert's location. Ms. Letcher's counsel did not object to the IME, but asked that the examination be conducted after 3 p.m.

On January 17, 2010, defendants' counsel told Ms. Letcher's counsel that the examination was expected to last from 9 a.m. to 5 p.m., and, thus,

that her request that the examination be scheduled after 3 p.m. could not be accommodated.  <u>See</u> Docket 36-4.  On January 19, 2010, Ms. Letcher's counsel responded without objection.  <u>Id.</u>

On January 25, 2010, defendants proposed either February 25 or 26, 2010, for the examination.  <u>See</u> Docket No. 36-5.  On February 1, 2010, Ms. Letcher's counsel indicated that she would submit to the exam on February 26.  <u>Id.</u>

On February 5, 2010, Ms. Letcher's counsel wrote to defendants that he would not allow Ms. Letcher to submit to the scheduled examination unless defendants supplied the following details: the name of the expert, the expert's curriculum vitae, a detailed description of the scope of the examination including tests to be performed, the duration of each test, the time the examination was to start, and the location of the examination.  <u>See</u> Docket No. 36-6.

On February 11, 2010, defendants responded by identifying their expert as Minneapolis, Minnesota, clinical psychologist Dr. Dan Dossa.  <u>See</u> Docket No. 36-7.  Defendants also supplied Dr. Dossa's CV, provided a time estimate of three to five hours for a diagnostic interview, and three to five hours for two tests, the Minnesota Multiphasic Personality Inventory–II and the Millon Clinical MultiAxial Inventory II.  <u>Id.</u>  Defendants wrote that the exam would begin at 9 a.m., but that a location for the exam had not yet been secured.  <u>Id.</u>

Defendants also offered to split up the exam by allowing Ms. Letcher to do the diagnostic interview with Dr. Dossa on February 26, 2010, and allowing her to take the two tests on a separate day of her choosing as long as the tests were taken in a proctored setting.  Id.

On February 18, 2010, Ms. Letcher's counsel wrote to defendants and stated that she agreed to submit to the IME with the following unilateral conditions:  (1) Ms. Letcher would not discuss the underlying events, conduct and work environment on which her complaint was based except to describe those things in general terms; (2) Ms. Letcher would not submit to the exam for more than six hours; (3) Ms. Letcher's attorney would be allowed to attend; and (4) Ms. Letcher would be allowed to make an audio recording of the exam.  See Docket No. 36-8.[1]

Defendants did not agree to these conditions and, when the parties could not resolve their differences among themselves, defendants filed the instant motion to compel, seeking this court's order requiring Ms. Letcher to submit to the IME on defendants' terms and also seeking sanctions.  Ms. Letcher resists the motion.

---

[1]There were other conditions which are not objected to by defendants in their motion to compel and, therefore, which the court presumes there is no dispute regarding.  These other conditions were that Ms. Letcher did not want to provide her home phone number, did not want to give insurance information, would not be financially responsible for the exam, and would submit to only one exam.  See Docket No. 36-8.

## DISCUSSION

### A.    Meet and Confer Requirement

Ms. Letcher argues that defendants' motion to compel Ms. Letcher's IME with Dr. Dossa should be denied because defendants' counsel failed to attempt to resolve this matter with plaintiff's counsel prior to filing the motion. The court finds this argument to be without merit.

Rule 37(a) of the Federal Rules of Civil Procedure requires before a motion to compel discovery may be filed that the parties confer or attempt to confer in good faith in an attempt to resolve the discovery dispute without court action and that such attempts were unsuccessful. <u>See</u> Fed. R. Civ. P. 37(a). Similarly, local rules of this district require that the parties meet informally, either in person or by telephone, and attempt to resolve their differences before filing a motion to compel discovery. <u>See</u> D.S.D. Civ. LR 37.1.

In support of the instant motion, defendants' counsel filed an affidavit which she signed stating, under oath, that in response to Ms. Letcher's counsel's letter of February 18 imposing unilateral conditions on the IME, both of defendants' counsel contacted Ms. Letcher's counsel in an attempt to resolve the parties' differences regarding the conditions of the IME. <u>See</u> Docket 36. The affidavit recites that those attempts at resolving the issues raised in the present motion were unsuccessful. That is sufficient to satisfy the meet-and-confer requirement.

Ms. Letcher suggests in her brief that defendants should have waited until the IME was underway to see if Ms. Letcher would indeed hew to the conditions she refused to negotiate before filing the instant motion. However, this would require Dr. Dossa to travel to Rapid City, incur travel expenses, and in all probability, incur his expert fee for the entire day, only to gain defendants nothing because the IME would not take place. The court does not interpret either Fed. R. Civ. P. 37 or D.S.D. LR 37.1 to require such drastic steps in order to meet the precondition that the parties attempt to resolve their differences before a discovery motion may be filed. Thus, the court moves on to the merits of defendants' motion.

**B.      Standard Applicable to Rule 35 Motions**

Rule 35 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

(a)      Order for an Examination.

(1)      *In General.*  The court where the action is pending may order a party whose mental or physical condition–including blood group–is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.  The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

(2)      *Motion and Notice; Contest of the Order.*  The order:

(A)      may be made only on motion for good cause and on notice to all parties and the person to be examined; and

(B)     must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

<u>See</u> Fed. R. Civ. P. 35(a).  Once the examination has been performed, the examiner must produce a written report that details his examination findings including diagnoses, conclusions, and the results of any tests.  <u>See</u> Fed. R. Civ. P. 35(b).  This report must be made available to the party who submitted to the examination.  <u>Id.</u>  No patient-physician privilege applies to the report of the independent examination.  <u>Id.</u>

A party seeking an order for a Rule 35 examination must show two things:  (1) that the plaintiff has put her physical or mental condition "in controversy" and (2) that there is "good cause" for the exam.  <u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 117-18 (1964).  The movant must show that "the condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination."  <u>Id.</u> at 118.  A mere showing of relevancy is insufficient to establish "good cause."  <u>Id.</u>  In addition, the court should consider whether the desired information can be obtained by means other than a Rule 35 exam.  <u>Id.</u>

Even if a mental examination is warranted under Rule 35, the moving party has no absolute right to compel that examination by a particular expert of its own choosing.  <u>McKitis v. DeFazio</u>, 187 F.R.D. 225, 227 (D. Md. 1999); <u>Stinchcomb v. United States</u>, 132 F.R.D. 29, 30 (E.D. Pa. 1990); 8A Charles A.

Wright, Arthur R. Miller, & Richard L. Marcus, <u>Fed. Practice & Procedure</u>,

§ 2234.2 at 485 (2d ed. 1994) (hereinafter "Fed. Practice & Procedure").

However, if there is no serious objection to the examiner selected by the moving

party, it is usually best to appoint the doctor of the moving party's choice.  8A

<u>Fed. Practice & Procedure</u> § 2234.2 at 485; <u>Holland v. United States</u>, 182

F.R.D. 493, 494-495 (D.S.C. 1998) (refusing plaintiff's request that the court

appoint someone other than defendant's chosen physician to conduct the exam

where there was no showing of personal bias on the part of defendant's

physician nor any allegation that the physician would use discredited or

harmful techniques to examine the plaintiff); <u>DeFazio</u>, 187 F.R.D. at 227

(ordering exam with defendant's chosen physician where plaintiff raised no

issues as to that physician's qualifications to conduct the exam).

The reason for such an approach is that the plaintiff is allowed to select

his or her own doctor to testify as to the plaintiff's physical condition, so

fairness dictates that the defendant have a similar right.  8A <u>Fed. Practice &</u>

<u>Procedure</u> § 2234.2 at 485.  Rule 35 is "to be accorded a broad and liberal

treatment, to effectuate the purpose [of the rules of civil procedure] that civil

trials in the federal courts no longer need be carried on in the dark."

<u>Schlagenhauf</u>, 379 U.S. at 114-115; <u>Herrera v. Lufkin Indus., Inc.</u>, 474 F.3d

675, 690 (10th Cir. 2007).

Ms. Letcher concedes that she has put her mental status in controversy and that there exists good cause for an examination–in some form–under Rule 35.  See Plaintiff's Response in Opposition, Docket 38, page 4.  Ms. Letcher's objections to the proposed examination center on the conditions of the exam.  Specifically, the defense has indicated that the proposed examination will take from five to ten hours, split between an interview and objective testing.  Ms. Letcher seeks to limit the examination to no more than six hours total.  Ms. Letcher also seeks to have her attorney present during the examination and to make an audio recording of the examination.  Defendants object to both of these conditions.  Finally, defendants object to the limitation on the scope of the examination proposed by Ms. Letcher.

**2.      Conditions Attending a Rule 35 Examination**

**a.      Length of the Interview**

Ms. Letcher requests that the length of her interview be limited to a set time period.  In support of that request, she submits an affidavit from Dr. Dewey Ertz, her treating psychologist, who expresses the fear that a prolonged interview of Ms. Letcher regarding events at RCRH may lead her to "experience physical and emotional symptoms if she is re-traumatized through a prolonged exposure during an evaluation."  See Docket 39-5.  Dr. Ertz opines that a three-hour interview is "beyond her tolerance."  Dr. Ertz suggests that

Ms. Letcher's IME be split up into several sessions separated by at least two weeks between each session.

Dr. Dossa has stated that he anticipates the diagnostic interview portion of this examination of Ms. Letcher would take from three to five hours.  <u>See</u> Docket 35.  The testing Dr. Dossa proposed is estimated to take from two to five hours.  <u>Id.</u>  Defendants have already offered to allow Ms. Letcher to perform the testing portion of the IME at a later date, so long as that testing is done in a proctored setting.  <u>See</u> Docket 36-7.

In <u>Edwards v. Superior Court</u>, 549 P.2d 846, 851 (Cal. 1976), a state court decision based on a provision nearly identical to Fed. R. Civ. P. 35, the plaintiff objected to the length of defendant's expert's proposed four-hour psychiatric IME.  The plaintiff had made no showing that an effective examination could be performed in less than four hours and the California Supreme Court affirmed the trial court's decision refusing to shorten the time allowed for the exam.  <u>Id.</u>

It is easy for the court to adopt Ms. Letcher's time limitations with regard to separating the interview portion of the IME from the testing portion. Accordingly, the court will order that the testing portion of the IME take place at a later time than the diagnostic interview, separated by at least two weeks, and that such testing shall take place in a proctored setting.  The parties are ordered to settle by mutual agreement the details of  who will proctor the tests,

when the tests will be taken, and where the tests will be taken.  Any expense incurred for the location where the tests are to be taken or for the proctor's time are to be split evenly by Ms. Letcher and defendants.

The interview portion of the IME presents a more difficult issue.  The minimum amount of time Dr. Dossa indicates he needs for the interview–three hours–is beyond Ms. Letcher's ability to withstand according to Dr. Ertz.  Dr. Dossa indicates that if the amount of time he is allowed for the interview is artificially shortened, the results of his examination would be invalid.  See Docket No. 35.  Dr. Ertz's prediction of harm to Ms. Letcher stems from discussion of the events that occurred at RCRH.  Docket 39-5.  However, the diagnostic interview would cover many topics other than events at RCRH.  Dr. Dossa has indicated that he intends to ask Ms. Letcher about her personal psychosocial history, her medical history, her family history, her past psychological/psychiatric treatment and care, medication history, past and current perceived stressful events, perceived psychological impact of events, and current psychosocial functioning.  Dr. Ertz has not rendered an opinion that Ms. Letcher's discussion of these topics would cause her harm.  But certainly the events at RCRH would be an important and significant topic covered during the interview.

Splitting Dr. Dossa's interview up into two or more sessions would cast doubt on the validity of the results.  Moreover, separating those sessions by

two weeks or more would incur unnecessary expense in bringing Dr. Dossa back to Rapid City from Minneapolis multiple times. Balancing all of the factors presented by the parties to the court, including especially the fact that major portions of the diagnostic interview will concerns topics unrelated to events at RCRH, the court declines to order Dr. Dossa to split up his diagnostic interview of Ms. Letcher. Rather, Ms. Letcher is ordered to report for this interview with Dr. Dossa on a single date and time, which date and time are to be mutually agreed upon by the parties. Dr. Dossa, for his part, is ordered to proceed with all due care and expedition in conducting this interview so as not to unnecessarily prolong it. In no case shall the diagnostic interview exceed five hours. Furthermore, during the interview, Ms. Letcher is to have a 10-minute break every two hours and an hour lunch break should the interview stretch beyond a morning.

### b.    Scope of the Interview

In the correspondence that Ms. Letcher's counsel sent to defense counsel prior to the instant motion being filed, Ms. Letcher purported to unilaterally limit the scope of the interview, indicating that Ms. Letcher would not discuss the underlying events, conduct and work environment on which her claims are based except to describe those topics in "general terms." See Docket 40-5, ¶ A. In response to defendants' motion to compel, Ms. Letcher argues that the court should impose this condition as part of the IME with Dr. Dossa because the

information about Ms. Letcher's claims is available from another source–the plaintiff's deposition.

The court notes that the entire reason for the IME is to assess whether Ms. Letcher really does suffer from a mental condition, whether that condition constitutes a disability if it does exist, and whether defendants caused Ms. Letcher severe emotional distress by their actions.  Ms. Letcher's complaint places her mental condition in controversy, as she concedes, and therefore, the court will not limit Dr. Dossa's exploration of the very issues she herself has placed before the court.

Furthermore, as the party seeking a protective order from the court as to the scope of this discovery, it is incumbent on Ms. Letcher to demonstrate good cause for such protection.  See Fed. R. Civ. P. 26(c).  Ms. Letcher has not done so.  She has cited no authority specifically supporting her position, other than the general statement that one of the factors a court should consider under Rule 35 is whether the information is available elsewhere.  Ms. Letcher provides the court with no excerpt from Ms. Letcher's deposition showing that the topics Dr. Dossa wishes to inquire into have already been answered by Ms. Letcher in a deposition.  Indeed, from counsel's February 18, 2010, letter setting forth the unilateral condition as to scope, it would appear to the court that Ms. Letcher's deposition has not yet been taken by defendants.  See Docket 40-5, ¶ A (stating that defendants may take plaintiff's deposition in the

future). Thus, the issue as presented to the court is this: Ms. Letcher seeks to limit the scope of Dr. Dossa's inquiry based on questions that may be asked of her at a deposition that has yet to be taken. What should be obvious is that that source of information–the plaintiff's deposition–is not available to Dr. Dossa because it does not exist yet. The court will not adopt Ms. Letcher's proffered position on the scope of her IME.

### c. Presence of Ms. Letcher's Attorney or Use of a Recording Device at the IME

Ms. Letcher seeks to have her attorney with her throughout the IME and to operate a recording device during the IME. Defendants oppose this condition. Dr. Dossa has opined that having any third party present during the exam, or indeed tape-recording the exam, would alter the examination by raising the potential for secondary investment in a particular presentation by Ms. Letcher, and by Ms. Letcher presenting information to two audiences. Docket 35.

The Federal Rules of Civil Procedure are silent regarding under what circumstances a third party or a recording device might be permitted in a Rule 35 IME. Federal Rule 26 gives a district court discretion to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." See Fed. R. Civ. P. 26(c) (grounds for a protective order). And Rule 35 itself addresses the court's

discretion to determine the time, place, manner, conditions, and scope of an examination.  See Fed. R. Civ. P. 35(a)(2)(B).

The Wright and Miller treatise on procedure in the federal courts has stated that, "the presence of, and possible interference by, an attorney or other representative of the" plaintiff at an IME "might disrupt, or defeat the purpose of, the examination," a concern that is "heightened during a psychiatric examination."  8A Fed. Practice & Procedure, § 2236, at 497-98.  That treatise goes on to state that, "the norm in federal court is that counsel will not be allowed to attend [a Rule 35 examination] unless good cause is presented to justify that."  Id. at 501.  The author of a 1998 law review article on the subject concurs that the overwhelming weight of authority in federal courts is against allowing an attorney or recording device in a Rule 35 IME.  See William S. Wyatt and Richard A. Bales, The Presence of Third Parties at Rule 35 Examinations, 71 Temp. L. Rev. 103, 110 (Spring 1998) (stating that "the overwhelming majority of courts that have considered the issue have denied the examinee's request to have his attorney present during the [Rule 35] examination.").

Of course, these secondary sources are not controlling precedent in this circuit.  Decisions of the United States Supreme Court and Eighth Circuit are.  However, there are no clear guidelines on this subject from the Supreme Court.

There is an Eighth Circuit decision involving the matter of an attorney's appearance at a physical IME, rather than a mental IME.

In <u>Sanden v. Mayo Clinic</u>, 495 F.2d 221, 223 (8th Cir. 1974), a registered nurse brought a medical negligence action alleging that two surgeons subjected her to extensive anal surgery which she had not authorized and by which she alleged that her anal sphincter was irreparably damaged. Defendants sought a physical IME by their expert to conduct an electromyographic study of plaintiff's anal sphincter to determine whether the nerves of that muscle were healthy and intact or damaged. <u>Id.</u> at 224. Plaintiff requested that a physician of her choosing be allowed to attend the IME as an observer. <u>Id.</u> The district court refused the plaintiff's request and the Eighth Circuit affirmed that decision as being within the trial court's discretion. <u>Id.</u> at 224-25.

In the <u>Tomlin</u> case, a decision by a district court within the Eighth Circuit, the defendants sought a psychological IME of the plaintiff to consist of a two-hour clinical interview followed by psychological testing. <u>Tomlin v. Holecek</u>, 150 F.R.D. 628, 629 (D. Minn. 1993).[2] Plaintiff sought to have a representative from her counsel's office present at the IME, a request later

_____

[2]This court's citation to <u>Tomlin</u> is not meant to suggest that <u>Tomlin</u> constitutes binding precedent on this court–it does not. However, as a sister district within the Eighth Circuit, the reasoning of the <u>Tomlin</u> court is helpful as the <u>Tomlin</u> court is also bound by Supreme Court and Eighth Circuit precedent. In addition, the <u>Tomlin</u> decision is a watershed decision of its kind, and is referred to by many courts from within and without the Eighth Circuit.

amended to a request to tape-record the IME.  Id.  Defendants objected, producing an affidavit from their expert who stated that the presence of third persons at the interview would tend to undermine the objectivity and openness of the plaintiff's responses.  Id. at 629-30.  The district court denied plaintiff's request to have either a third person present at the IME or to tape record the same.  Id. at 630.

The court noted that defendants' expert's opinion that the presence of a third person, physically or by tape-recording, was "inimical to the conduct of a valid psychiatric examination" was never contradicted by plaintiff.  Id. at 631-32.  "[P]sychological examinations necessitate an unimpeded, one-on-one exchange between the doctor and the patient."  Id. at 632 (citing Cline v. Firestone, 118 F.R.D. 588, 589 (S.D.W. Va. 1988)(citing Durst v. Superior Court for Los Angeles County, 222 Cal. App. 2d 447, 452-53, 35 Cal. Rptr. 143 (1963)); Brandenburg v. El Al Israel Airlines, 79 F.R.D. 543, 544 (S.D.N.Y. 1978); and Swift v. Swift, 64 F.R.D. 440, 443 (E.D.N.Y. 1974)).  The need for a private and personal exchange between the plaintiff and defendants' expert was "self-obvious" to the court.  Tomlin, 150 F.R.D. at 632.  Further, the court noted that Rule 35 exams were intended to "level the playing field," and noted that plaintiff's experts were allowed to examine plaintiff in private and without the intrusion of defendants or their representatives, so defendants' experts should be accorded the same privilege.  Id.

In Hertenstein v. Kimberly Home Health Care, Inc., 189 F.R.D. 620, (D. Kan. 1999), the plaintiff brought sexual harassment and retaliation claims against her former employer, alleging emotional distress. The employer sought to have a psychological IME conducted, and plaintiff objected, seeking to have her attorney present or to tape-record the IME. Id. at 628. Noting that the IME may well be "one of the few opportunities for a defendant to have access to a plaintiff, and the only opportunity for a defendant to have a plaintiff examined by defendant's expert," the court stated that "some preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted, provided that it is not an improper examination." Id. at 624 (quoting Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 609 (C.D. Cal. 1995)).

Like Ms. Letcher in this case, the plaintiff's therapist in Hertenstein opined that "extra caution and sensitivity" were required in evaluating the plaintiff about the matters which formed the basis of her employment claims and that the IME might result in "additional psychological damages" to the plaintiff. Id. at 624. Defendants' expert countered that the presence of a third party or a recording device at the IME was "inimical to the process of performing a proper, professional psychiatric clinical or medicolegal evaluation." Id. at 625.

The district court denied plaintiff's request for either the attorney or the recording device.  Id. at 629.  Quoting another decision from the District of Kansas, the court held that and IME "should be divested as far as possible of any adversary character" and the introduction of counsel at the IME would inject a partisan element, as well as create possible grounds for the lawyer to have to withdraw as he or she would then become a witness in the case.  Id. (citing Dodd-Anderson v. Stevens, Nos. 92-1015-MLB and 92-1016-MLB, 1993 WL 273373 (D. Kan. May 4, 1993)).  In so holding, the court distinguished the decision in DiBari v. Incaica Cia Armadora, S.A., 126 F.R.D. 12 (E.D.N.Y. 1989), where a court reporter was allowed to attend an IME with the plaintiff because the plaintiff was not well educated and had difficulty with the English language.  Id.  No such factors existed in Hertenstein's case the court held.  Id.

In another New York case, the court also held that neither a third party nor a recording device would be allowed at a mental IME.  Tirado v. Erosa, 158 F.R.D. 294, 295 (S.D.N.Y. 1994).  Although the court acknowledged that the IME would involve discussion of sensitive information, the court was unpersuaded that the presence of the plaintiff's attorney or a recording device would make this discussion with defendant's expert any more comfortable.  Id.

Although involving a physical examination rather than a mental examination, the court in Holland v. United States, 182 F.R.D. 493, 495 (D.S.C. 1998), denied the plaintiff's request to have a third party present at her

examination or to record the exam. The court cited the rationale discussed in

Tomlin and its progeny to be persuasive, noting that the general rule in federal

courts is not to allow any recording or third persons in the IME absent

compelling reasons. Id. See also Romano v. Il Morrow, Inc., 173 F.R.D. 271,

274-75 (D. Or. 1997) (no third party observer or recording allowed of physical

IME).

This court has found only three decisions in which either an attorney or

a recording device was allowed in an IME over opposing counsel's objection.

They are the DiBari decision, discussed above, Sidari v. Orleans County, 174

F.R.D. 275, 291 (W.D.N.Y. 1996); and Zabkowicz v. West Bend Co., 585 F.

Supp. 635 (E.D. Wis. 1984). The Zabkowicz decision, five paragraphs long in

its entirety, is not long on analysis. The plaintiffs asserted sexual harassment

claims under Title VII for actions that occurred at one of the plaintiff's place of

employment and alleged that they had suffered extreme emotional distress. Id.

at 636. The defendants sought a psychiatric IME of the plaintiff without the

presence of a third party or a recording device. Id. No particularized

allegations appear to have been made by either party, or else they were not

discussed by the court. Rather, the plaintiff made the general argument that

the IME would be a *de facto* deposition, and the defendant made the general

argument that the presence of a third party would be injurious to the IME. Id.

The court ruled in favor of the plaintiff on the basis that the defendant's expert

was not a neutral party, but an agent of the defendants.  Id.  In reaching its extremely brief conclusion, the Zabkowicz court neither discussed nor cited any authority.

The court in Sidari v. Orleans County, 174 F.R.D. 275, 291 (W.D.N.Y. 1996), allowed the tape recording of a mental examination in an employment discrimination case.  However, the discussion–five sentences long–is conclusory in nature and does not illuminate the issue for this court.[3]

This court finds DiBari, Sidari, and Zabkowicz unpersuasive.  First, Ms. Letcher presents no particularized need for the presence of a third party or a recording device as did the plaintiff in DiBari.  Presumably, Ms. Letcher is of average intelligence at least, having held a position of some responsibility at RCRH for a number of years and she has made no allegation that she is not comfortable with the English language.  The court is unpersuaded by the Zabkowicz and Sidari decisions because they are not binding on this court, they are against the great weight of other federal cases to have addressed this

---

[3]The entire discussion of the issue is five sentences long in which the court acknowledges that tape recording is neither prohibited nor required, that the safeguards in Fed. R. Civ. P. 35(b) are sufficient to protect a party's rights, that the court acknowledges that psychiatric examinations have a subjective component, and that tape recording will be allowed.  Sidari, 174 F.R.D. at 291. The case of Gavenda v. Orleans County, 174 F.R.D. 272 (W.D.N.Y. 1996), is a companion case to Sidari raising the exact same issue before the exact same court.  The paragraph in Gavenda disposing of the issue is identical to the paragraph at issue in the Sidari case.  See id. at 274.

issue, and the decisions themselves are devoid of any meaningful analysis or citation to authority.

As courts which have rejected a plaintiff's request for the presence of a third party or a recording device at an IME have observed, there are a number of tools at a plaintiff's disposal that can ameliorate or eliminate any unfairness which arises as a result of the IME. The danger of an expert eliciting improper information from the plaintiff during an examination can be dealt with through orders excluding from evidence statements about nonmedical matters and statements made in response to improprieties. 8A Fed. Practice & Procedure, § 2236, at 502; Tomlin, 150 F.R.D. at 632 (noting that the court had at its disposal remedies to address the use of discredited evaluatory techniques, techniques of questionable validity, or techniques which jeopardized plaintiff's well-being). Discovery allowed with regard to experts under the Federal Rules of Civil Procedure is extensive. See Fed. R. Civ. P. 26(a)(2) and 35(b). Ms. Letcher's counsel may obtain complete access to all of the notes and records Dr. Dossa creates in connection with this IME. Id. They may depose Dr. Dossa. See Fed. R. Civ. P. 30. Counsel will be allowed to "exhaustively test and challenge [Dr. Dossa's] conclusions, carefully exploring the reasons therefor, including the specific questions and answers exchanged between [Dr. Dossa] and [Ms. Letcher]." Edwards, 549 P.2d at 850. Ms. Letcher's counsel may have Dr. Ertz at their side during cross-examination to "prompt

him into every conceivable area of legitimate inquiry." Id. Furthermore, motions *in limine*, cross-examination, and contrary expert evidence provide abundant procedural safeguards. Id. Accordingly, plaintiffs' request for the presence of a third party or a recording device at the IME with Dr. Dossa is denied.

## C.  Sanctions

Defendants, in their motion to compel, seek to have the court impose sanctions upon Ms. Letcher and/or her counsel for resisting the discovery. However, the court declines to do so under the facts of this case.

Rule 37 of the Federal Rules of Civil Procedure provides that a court "shall" impose sanctions upon the granting of a motion to compel unless the court finds that the opposing party's nondisclosure, response or objection was substantially justified or that other circumstances make an award of sanctions unjust. See Fed. R. Civ. P. 37(a)5)(A).[4] As defendants acknowledge in their brief in support of the motion to compel, there are decisions to the contrary of defendants' position on the matter of this IME, both as to the grounds for conducting the IME in the first place and as to the conditions attendant to that IME once the grounds for the IME are established.

---

[4]The sanctions are specified to be the moving party's reasonable costs in asserting the motion. See Fed. R. Civ. P. 37(a)(5)(A).

In addition, the Eighth Circuit has not ruled definitively on the conditions for an IME, particularly the issue that was most contested here:  the plaintiff's right to have her attorney or a recording device present at the IME. The <u>Sanden</u> opinion stands not for the proposition that a third party may never be present at an IME, but only that the district court's decision under the facts of that case not to allow a third party at the plaintiff's IME was not an abuse of discretion.  <u>Sanden</u>, 495 F.2d at 224-25.  In addition, there is language in the <u>Sanden</u> decision not unfavorable to the plaintiff's position.  <u>Id.</u> (stating that "[a]lthough the examined party will usually be permitted to have his or her own physician present [at a physical IME], . . . we find that under the circumstances of this case Judge Devitt did not abuse his discretion.").

Under the circumstances, given the lack of clear and binding precedent governing the conduct of Ms. Letcher's IME, the court rejects defendants' request for sanctions against plaintiff or her counsel.

## CONCLUSION

Defendant's motion to compel Ms. Letcher to attend the IME with Dr. Daniel Dossa [Docket 33] is granted in part and denied in part in accordance with the above opinion.

## NOTICE TO PARTIES

A motion to compel discovery, such as the one ruled upon in this order, is not dispositive of any claim in the case.  Accordingly, pursuant to 28 U.S.C.

§ 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. Id. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require review by the district court.

Dated May 12, 2010.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE